number 23-10 9 or 6 mr. Agarwal is up first and he has reserved four minutes for rebuttal good morning your honor and may it please the court Samir Agarwal on behalf of plaintiff appellant Ward Lawrence Kenyon for nearly 10 minutes mr. Kenyon lay on the floor of a bar handcuffed and bleeding profusely after sustaining several gunshot wounds the Sebastian Police Department officers who shot at mr. Kenyon several times failed to provide medical treatment despite their training and access to the requisite supplies it was not until a police officer from another department arrived on the scene and immediately sprung into action that mr. Kenyon received the life-saving care he needed to stabilize his injuries before EMS personnel arrived let's you a factual question I think there were two sort of barrages of gunfire right there's one initially five shots initially and then 11 shots later right is that right so in the initial do we know whether in the initial five shot burst your client was hit the there's no allegations about exactly when he was hit within the whole incident happened within a 13 second period so it was pretty quick between the initial five-second burst and the latter 11 second sorry the latter 11 round set of shots that were happened after mr. Kenyon was underneath the pool table there's nothing that we don't have it allegations about when exactly you ran to the pool table after the shots began correct he was he felt he fell underneath the table after the first round of shots was fired so it was the first with the gun so with the gun still and the reason I guess I'm asking is that is it do we need to separate the two gunfire incidents and I realized that in your in your opening it sounded like you were headed toward deliberate indifference so I don't mean to just to derail you but if we're thinking about the excessive force claim do we need to disaggregate the two because it seems at least possible to me that you might win one and lose one like you might win an excessive force claim with respect to the former the first barrage but you might lose it with respect to the second and so what do we need to disaggregate them if we're not really sure when he got hit what would that do to like the damages calculation or something yeah so I think on the excessive force claim one of the key allegations for that claim is that at no point during the incident that officer Nauvoo see the gun and that's true at least as at least as it's alleged that's true for the whole incident and so I thought wouldn't there be reason to think that even that officer knew when he was under the pool table that he had the gun because Garrison had radioed right so Garrison radioed at some point it's a little fuzzy from the complaint exactly when the radio call came in in the in the in the course of the shooting but sure I think the point that you know maybe after the radio call then at that point officer Nauvoo knew about could could be said to have known about the gun after somebody verbally made some sort of comment to that effect but at least when the first shots were fired the way that the complaint is alleged it says that officer Nauvoo did not see the gun may ask a question regarding the amended complaint so the amended complaint in like paragraphs 37 38 39 and 40 reference a video surveillance that is alleged to be an hour long and that your client you know does particular timestamps as to what's transpiring in those paragraphs do we have a copy of that video surveillance so the video is not in the record the the only thing that's in the record right now is the amended complaint the you know the for whatever reason you know you could imagine a scenario in which the officers in response to the complaint had produced the video and you know move for summary judgment but they chose not to do that here they decided to move to right but we have case law Baker versus City of Madison where we say that you can incorporate since it's it's it's referenced in the complaint you can do an incorporation by reference and it doesn't change a motion to dismiss to a so I take that point to as well your honor but I think the fact remains that at least at this stage where we are in the about you know at the Court of Appeals the video never made its way into the district court and so it's not you know it's not before the court at least like for purposes of deciding this claim the reason another reason I was asking about separating the two incidents is that because I think you're probably right that given the facts as in the complaint what's the first officer's name I'm to do didn't know that your client had a gun who couldn't see it because of the positioning of the bodies or something right so I think that like dramatically enhances your excessive force claim with respect to first barrage but if we assume because of garrisons radio call that now everybody knows that he's got a gun when he's under the pool table in a crowded bar I think that dramatically weakens your excessive force claim with respect to that incident so hence my sort of sense that we need to bifurcate them it seems like the parties really haven't done that in the briefing but it seems like that we might need to yeah I think one option this court could take your honor is to if you if you find that at least on the first barrage of shooting that there could be an excessive force claim because the officer never saw the gun the court could reverse on the district courts excessive force finding and send it back and let the district court you know let this case play out and figure out exactly when but it would be just as to Nauvoo not as to garrison because garrison come right later so I so yeah we do have an allegation that officer garrison did see the gun when she fired and so you know the calculus is a little bit different with respect to her but we do have the case law from this court that said that just the presence of a gun enough is not sufficient this is the Perez case that the district court just overlooked when it was deciding the excessive force claim and so the factors that are you know relevant that were set out in Perez including you know where the gun was was pointed and and what movements are being made with it we have an allegation here that there were no aggressive movements with the gun whatsoever and so that you know even though officer garrison saw the gun I don't think that precludes the right and obviously that's your allegation but there's a video and so obviously the video may show something different yeah and I think that's you know the video may show something different and I think that's you know another thing that could be figured out at the district court if the if the court was to send it back about exactly how the successive force claim works with the video but right now we just have the allegations I'm sorry to have hijacked your argument let's talk about deliberate indifference okay your honor I appreciate it I'm sure I'd be happy to turn to deliberate indifference and you know we do think that mr. Kenyon also states all the in addition to the excessive force claim he also states all of the elements for a deliberate indifference claim the first one is whether he had a serious medical need and I think that one is pretty straightforward gunshot wounds this court has said and yeah I think everybody agrees yeah I don't think you need to waste right okay so the next element is whether the officers disregarded the risk of harm and on that one I think the starting point for the court's analysis is the case law that also involves gunshot wounds in which the court has said that delays you know minutes when the injuries are this serious and and the court using that case law you know applying that standard in cases involving gunshot wounds the court has looked at a case involving a four minute delay and a case involving a seven minute delay and in both of those cases the court said that there was at least enough information for a reasonable jury to find that the officers were deliberately deliberately indifferent to the suspects medical you have to rise to the standard of criminal recklessness sure so on the recklessness standard you know we have the point in our brief that the recklessness standard shouldn't apply here and that traces back to I guess two points your honor one is we don't think it applies here and two we think the based on the allegations it's we have adequately pled it and so I can start with the first about why we don't need to why it doesn't even control and I think that starts with the Betty Wade on bank decision and in Betty Wade the court you know did a deep dive on deliberate indifference in the 8th Amendment context and you know the whole thrust of the court's opinion and and also in the Supreme Court's opinion and farmer was about the 8th Amendment was about the text of the 8th Amendment and the history of the 8th Amendment and the meaning of the word punishment and there's all these indicators in Betty Wade about how you know the punishment aspect is relevant to why the recklessness standard applies at the last stage of deliberate indifference I'll just say speaking for myself I might move to your second point okay because I think one we've got case law that says for better or worse they're they're the same right the 8th and 14th Amendment standards are the same I recognize their pre-weight but you know worry whether we can undo them and two I'm not really sure that you would love a deep textual dive into whether or not there is an excess a deliberate indifference claim that attaches to the 14th Amendment somewhere like in the ether right so I think like a closed textual analysis doesn't isn't going to bode very well for you so if I were you I think I would just say I can meet criminal record yeah I take the point your honor and we have the circuit split where some courts have addressed this but the second point about recklessness and the way that it was defined in Betty Wade about how the recklessness standard would would go is that you know the recklessness standard is met when a person disregards a risk of harm of which he is aware and I think here we have sufficient allegations to say at least that would at this stage if all the allegations that are in the complaint are borne out as true and we make it all the way to trial and the evidence is exactly as it's pleaded in the complaint I think a reasonable jury could find that the officers but how do you have that like in the cases where we did find that there was deliberate indifference like Valderrama you know the officers were you know trying to talk to story in another case Daniels you know the officer used profanity and said you know I shot the you know in the head and he was gonna die in a minute in Patel you know they denied the suspects request for water and early refused to acknowledge the defendant I mean so there's a lot of extra things that the officer did I assume if the law enforcement officer met to the wound and like you know pressed it or you know did something to make the injury worse that would be deliberate indifference so exactly how could this be criminal recklessness when they called EMS and didn't do anything for him I know they didn't render aid but is that in itself sufficient to say that that's medical that that's a criminal recklessness yeah I think in this context it would it just their failure to render aid whatsoever would constitute criminal recklessness because the you know miss at that point what mr. Kenyon was handcuffed he was secure there was no you know threat to the officers at least as it's pleaded there was no threat to the officer safety there was no nothing else that the officers had to be doing within their police duties then but there's no clearly established law that is I mean what case law supports that yeah so on the qualified immunity point your honor I think it's important to sort of zoom out about what we're trying to do with a qualified immunity analysis and I think the Gilmore case that the court recently decided is relevant here and there the court explained to that when we're doing qualified immunity the whole purpose of qualified immunity so that the officers have fair notice that their conduct was unlawful and here you know we do have the Valderrama case I know I understand that you know your but there's still some similarities including the nature of the injury including the length of delay but in addition to Valderrama we also have you know we have an officer who popped in Valderrama they did something more they were proactively making a conscious decision not to help him because they were coming up with a cover-up story yeah so I understand Valderrama is not on all fours here I think it you know it's constructive but it's not on all fours but the court has said that we don't need a case on all fours for the for qualified immunity and I think the other relevant points on qualified immunity are some of the factual points here including that officer Radek another off we know exactly what a reasonable officer would have done in response to mr. Kenyon's injuries when we have officer Radek who showed up after you know ten minutes later and saw that mr. Kenyon was struggling and needed immediate medical care and he sprung into action and did what he could with you know with the supply he used mr. Kenyon's belt as a tourniquet to try and stabilize his injuries and so I think it's hard for the officers to say that they didn't have fair notice that they had to do something more when you know exactly what a reasonable officer would have done in our taxonomy do you view this as a bucket two case or a bucket three case I think the line is blurry between between bucket two and bucket three I think there's elements of both going on here and you know there's some there are some important principles for bucket two and one that comes to mind is in the McGillicott case the court has said that you know grossly inadequate care or grossly grossly grossly inadequate provision of care will constitute deliberate indifference so I think that is a principle that could apply but I think bucket three is also relevant that this could be a situation of obvious clarity because we know exactly what another officer would have done you know would have done seeing the nature of mr. injuries and we also have the Sebastian Police Department policy that says that when deadly force is used officers not only have to call EMS but also have to provide first aid and we also have the case law from other circuits and Gilmore you know is helpful on that regard as when we're in bucket three to say that the case law from other circuits is instructive and so we have the Sixth Circuit decision in heater which I think is pretty close to directly on point here in that case you had Judge Blumenthal and Chief Judge Sutton in the majority and they you know analyze the claim very similar to the one we have here EMS was called within 25 seconds of the shooting but the officers took no action in the remaining eight and a half minutes before the paramedics arrived and the court said that that's deliberate indifference the court rejected the exact type of bright-line rule that that the officers are proposing here that calling EMS is all they have to do and the court said that as a matter of precedent and common sense hypothetical I know this is not these facts but obviously if you write an opinion it has implications so let's assume that another officer was injured in this barrage of bullets would that change the calculus about what the other officers had to do yeah so I think the way this court's case law has said about what type of response is required is you know it is a very fact-specific inquiry and so I think you know to your honors hypothetical if the officers had other you know other things they needed to take care of on the scene and I think the heater case is helpful for this because it says that you know one of the key points that went in the plaintiff's favor is the defendant was not tending to other police duties so we so we might have it might be a different case if the defendant was you know had other police duties to do had to secure the scene you're right to say that you know we don't have any of those allegations here we don't know because we don't have the video yeah we don't have the video and we don't have any any evidence besides what's in the complaint and so at least at this stage you know we don't know what the office you know the way it's pleaded that the officers were not doing anything during that 10-minute period and so you know I think the officers response if the officers had something else that they needed to do on the scene could be a relevant factor in the analysis of you know what type of responses are fired but at least as it's pleaded here you know we don't have to have to worry about those types of hypotheticals okay very well we've carried you well beyond your time but you've got your four minutes of rebuttal time remaining thank you so much all right so we're splitting between mr. Vasquez and this Harold mr. Vasquez you're up for eight minutes is that correct good morning I'm on this may please report mr. Mark Vasquez for at the least on the blue and Garrison let's talk about what's planned to complete for a moment what is pointed is that mr. Kenyon was at a bar at 1030 there was warrants and violation of probation therefore he was already being there was going to be executed on him and he had a firearm although he was on probation did Navoo know from the complaint did Navoo know he had a firearm yes we have involved the fellow officer as to the first Molly or barrage as it has been described that because officer Singh saw it he has imputed that knowledge as well do we have any case law that that in which we have imputed knowledge in that kind of way that that pertains outside the investigation context it seems like completely sensible that if officers are engaged in a deliberate investigation that they would be presumed to share knowledge it doesn't seem sensible at all to me that upon immediately entering a bar that because one officer sees a gun the other necessarily sees it on what what's the fiction there that would allow us to impute the knowledge from one to another the execution of the warrant itself that's part of the investigation of who is mr. Kenyon he's located he is asked to step outside he immediately resists the officers but I'm talking about knowledge of the gun I mean that the to me that makes a difference between the two incidents if Navoo doesn't have any idea he has a gun in the first instance and she shoots him five times anyway that's a big deal second episode under the pool under the pool table now he's got a gun in a crowded bar completely different set of facts and you know I believe the one the court has hit the nail on the head as far as separating the two barrages I think for the second one it is clear that by then it is known to everyone including you but even if we assume for the sake of argument that he had not seen the firearm before he fired the first five rounds mr. Kenyon was resisting he he was actively engaged in physical altercation with officer Singh at the time but that allows deadly force resistance depending on the circumstances yes your honor it might it might allow the use of deadly force if he is going actively for a firearm but where do we get there how do we get to if he's going actively for a firearm with respect to Nauvoo well he is engaged in a physical altercation with Nauvoo and I can I can understand the court of the courts reluctance to concede after the first five rounds so we could separate those two this is why this is why I you know I'm sort of perplexed because normally we don't have a complaint that incorporates by reference video surveillance this is a this is a complaint that has time stamps and alleges that there's a an hour-long video why was the video not not incorporated by reference in your motion to dismiss I cannot tell you your honor why it was I would have submitted it as part of it I was not counsel a record at the time of the it it was filed okay I could I could also say that according to the allegations of the complaint when corporal Garrison calls in shots fired EMS it all happens within 13 seconds between the first round shot by officer Nauvoo and the last shot fired by officer Nauvoo in between the two volleys so 15 rounds altogether two volleys in 13 seconds by Nauvoo as far as Garrison knows goes she already knew that he had a firearm explain the complaint that he had a firearm and he barricaded himself under a pool table it's being said that he was protecting himself he still had the firearm after the shots had been fired anything is that his intention was according to the allegations of the complaint to get to flee the officers and discard the firearm because he knew he was in the wrong he was violating probation he had a firearm at a bar yeah so with respect to the second barrage I think you've got a pretty strong case speaking for myself with respect to the first I think you've got a pretty weak case can you talk about deliberate indifference a little bit yes your honor what from the complaint do we know these guys were doing for 11 minutes well as part of the allegations of the complaint the complaint itself alleges that they investigated went back to seeing and cleared things a little bit so that happened for some time and all it is not planned in the complaint there's a lot as the as a ruling counsel to assume that another officer was injured that's not planning the complaint but that was what actually happened but right but I mean we we were stuck with what's in the complaint right yes yes well at this stage we're stuck with that but another officer was and what is not planned it is not planned that officer Singh who was also there was delivered and they're deliberately indifferent to his medical needs he was there he didn't do anything either so that's not good against the other officer at the scene which is telling about by itself regarding the use of the deliberate indifference what we can say we've cited case law persuasive within within district courts in the 11th circuit as opposed to circuit courts outside of the 11th circuit including the Salvato case in the Salvato case do you think one is any more valuable in our qualified immunity analysis than the other district court case cases within the circuit out-of-circuit cases circuit cases outside the jurisdiction I think as far as officers are trained yes your honor because the 11th circuit is the one that binds them in this jurisdiction as opposed to circuit courts outside of the 11th circuit and always persuasive I understand it persuasive authority it is not it is not binding but it is within the jurisdiction where they practice or where they exercise their law enforcement duties I guess since you've invoked the training as the sort of the basis for QI what about the training here that they at least as I understand that that they were trained not only to EMS but also to administrate well that is the allegation itself it's paragraph 97 of the complaint it's not about training honor paragraph 97 succinctly states the vote when questioned by FDOE about his medical training as asking the food that he understood the need for tourniquets and things like that and if you reply yes so that is the extent and that is going that's been throwing the complaint beyond reasonableness this is a speculative conclusory argument that should not be used at this stage that is the only thing that they're hanging our heads off on right now about his alleged medical training that someone hearsay from FDOE asked him on medical training if he knew how to do tourniquets or something like that and he said yes that's all that's played about medical training and regarding the order that they've referred to Sebastian Police Department that is not put in the underlying complaint that is part of the appellate appellate argument in response to the motion to dismiss that it's not part of the four corners of the complaint your honor I think I've used pretty much all my time your honor if court has any questions otherwise I'll defer to miss Harold very well thank you so much miss Harold good morning may it please the court Catherine Harold on behalf of the appellee the city of Sebastian here petitioner Kenyon failed to state a liability pursuant to section 1983 based on a failure to train theory at the outset municipal liability for failure to train is purposefully difficult to establish because a lesser standard would result in de facto respond yet superior liability this is not a simple but for liability though that's what's mentioned in the reply brief second to establish the second element though Kenyon recites that a custom was the moving force it does not properly allege more than responding at superior liability to prove such liability there must be a deliberate choice that shows that the city understood and recognized that there was an issue and specifically decided to not train or did not do something that's not what occurred here an isolated incident though hypothesized in Kent in Canton as being a proper basis still is just a hypothesis it's not what happened here and it's not it doesn't show that there was a custom which the other case law that show which the other case I'll show finally there must be policies or a custom that is moving force there is no moving force here beyond de facto respond yet superior in the complaint plaintiff also mentions different policies that have to do with training and firearms however this does not show that there was a force based on those policies it mentions that they were trained at officer you was not trained this is again about vicarious liability and not about a constitutional violation I'm open to questions of court has any nope I think we're good thank you so much mr. Agarwal you've got your full four minutes remaining and ask you a question just as you get the question that I ended with your lawyer for the individual officers is about the training and I you know mentioned the policy which he I think perhaps rightly points out is not let him complain but as part of the response to a motion dismiss is that right what do we know about the policy from the complaint itself yes so the pot so the so the complaint frequently references the policy it references policy 600 C which is then mr. Kenyon attached to his opposition to the motion to dismiss so I think it is incorporated by reference especially given that we have a manel claim here that turns on the policy you know mr. Kenyon didn't attach it to the complaint but you know this is complaints are always construed liberally and especially so here where we have a pro se inmates who filed this complaint I think you know it's especially true that that he should be given every benefit of the doubt as far as how the complaint is read and what's what attachments were there and so you know that we do the policy did make its way into the record you know unfortunately the video didn't but the policy did and so I think the court can you know look at the policy and analyze it and see how it that fits into the picture and at least on the training question that the your honor brought up on the other side I think I have a similar answer that paragraph 97 is is the one I think that is relevant and that one says that officer Neville understood the need for for tourniquets and things like that and I think from that you know at least at this stage I think mr. Kenyon is entitled to an inference that you know mr. the officer Neville had medical training you know could have responded had at least sufficient medical training to you know be able to assess mr. Kenyon's condition while he was handcuffed and bleeding out and and would have been able to you know would have known how to apply a tourniquet and and that you know doing doing applying a tourniquet would be necessary ask you to address one question that I don't really think the briefs sort of fully frontally anyway confront one element of a deliberate indifference claim is causation I'm going that the deliberate indifference caused the injuries do we know here that the injuries themselves were caused exacerbated whatever by the 11-minute delay so I think we don't but I would say we don't need to because Valderrama itself has a point on this that delay itself is an inflection of it's like a wanton inflection of pain the wording is something to that effect but Valderrama is very clear that the delay is itself inflicting an injury and so it doesn't necessarily matter what his injuries were at time 1 or at time 1 plus 11 the fact that there was a delay of the significance at all it constitutes the officers inflicting an injury and would check the box on the causation element of the claim so so just I guess a couple other points to respond to I know we were talking about the value of the district court cases versus the Court of Appeals cases I think I draw the court back to the your case that I think is is well done and directly on point or you know the facts are so similar here that I think it's hard to escape the relevance of that decision to what was done here and you know I think to get to where the officers want to go on deliberate indifference I think the court would have to you know embrace the type of bright-line rule that they're asking for and that's just not how the court has decided deliberate indifference cases the court has said that these are fact-based cases in which the context matters and and you know applying some type of right-line rule that would you know allow officers to you know say that they provided adequate medical care anytime that they call DMS I think would you know eviscerate the deliberate indifference standard the Sixth Circuit posed a couple hypotheticals and we included one in the brief about you know some of the consequences of the officer's approach and and so I don't think that that approach can be could be could be adopted here and at this point if the if the court has no further questions we would ask this court reverse okay very well thank you so much to mr. Agarwal we know that you were court-appointed we certainly appreciate your service to your client into the court thank you judge thank you all that case is submitted and we will be in recess until tomorrow morning at 9 a.m.